**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**


**ROBERT FOXWORTH,**

      **Plaintiff,**

**vs.**                                **CASE NO. 1:07CV161-MP/AK**

**KEITH MCCRAY,**

      **Defendants.**

_____/


## REPORT AND RECOMMENDATION

Plaintiff alleges that Defendant, a correctional officer at Mayo CI, issued him a false disciplinary report (DR) in retaliation for his religious practice of wearing a kufee in the kitchen and for threatening to file a grievance. (Doc. 1). Defendant has filed a motion for summary judgment (doc. 17), with amendment (doc. 19), to which Plaintiff has responded (doc. 22), and Defendant has filed a reply. (Doc. 26). Defendant has also filed a motion for sanctions (doc. 27) to which Plaintiff has filed a response (doc. 28), with memorandum. (Doc. 29).

**I. Allegations of the Complaint (doc. 1)**

Plaintiff alleges that on March 25, 2007, he reported to work in food service wearing his kufee[1], an Islamic prayer cap, and was told by Defendant McCray to

---

[1] The spelling of this word is alternately kufi, kufee, and koofee, throughout the pleadings and other papers submitted in conjunction with this lawsuit.

remove it, contrary to Florida Administrative Code sections which allow Muslim and Jewish inmates to wear their head apparel at all times.  On March 29, 2007, Plaintiff was again allegedly told to remove his cap and Plaintiff told Defendant McCray he would file a grievance against him.  On April 12, 2007, Plaintiff alleges that he asked Colonel Hart if he could wear his kufee in food service and was told he could and that McCray was just "trying to lock [him] up."  Later, on Mary 4, 2007, McCray allegedly shouted at Plaintiff in front of others in food service that all Muslims were terrorists, all they wanted to do was blow people up, especially Plaintiff and Inmate Randy Pruitt.  He then called security and had Plaintiff locked up, and a  false DR was allegedly written up against Plaintiff following this incident, which was ultimately dismissed.  Plaintiff seeks nominal and punitive damages.

## II.	Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case."  Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), citing Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).  All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts.  Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).   The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  Celotex, 477 U.S. at 322-23.  Plaintiff

**No. 1:07cv161-MP/AK**

must show more than the existence of a "metaphysical doubt" regarding the material facts, <u>Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record."  <u>Mize v. Jefferson City Board of Education</u>, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, <u>Celotex</u>, <u>supra</u> at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment.  <u>Gauck v. Meleski</u>, 346 F.2d 433, 436 (5th Cir. 1965).

**No. 1:07cv161-MP/AK**

**III.    Defendant's Rule 56(e) evidence (Doc. 17)**

a)    <u>Affidavit of Keith McCray with exhibits (Exhibits A and B)</u>

Defendant attests that on May 3, 2007, during "counseling" with Plaintiff in food service Plaintiff became loud and argumentative and security was eventually called to escort him out of food services.  Defendant denies telling him he could not wear his kufi and denies making any derogatory remarks about Islam.  He contends that the DR was written because Plaintiff was being disorderly and not because of a discriminatory or retaliatory purpose.

The DR attached confirms Defendant's version of what happened and shows that Plaintiff pled guilty at a hearing held on May 24, 2007, and was given 30 days disciplinary confinement.  The print out also shows "N" by the question, "Postponed?"

Plaintiff's disciplinary history shows that he has had 14 DR's since 1994, several for disorderly conduct, and the history shows that he received one on May 3, 2007. Beside this DR under "days lost," is 0.

b)    <u>Disciplinary Investigative Report (Exhibit C)</u>

The report shows that Plaintiff and several witnesses were interviewed. Defendant McCray reported in his statement to the investigator that he was counseling Plaintiff about some stolen sausages when Plaintiff made a derogatory remark to Aramark employee Milton and then became loud and disruptive.

**No. 1:07cv161-MP/AK**

Plaintiff's statement is that McCray announced to everyone in food services that he considered all Muslims to be unibombers and terrorists, especially Plaintiff and Inmate Pruitt, and he then fabricated the DR to justify his prejudice towards Muslims.

Plaintiff listed three witnesses: Randy Pruitt, Toney Gray, and Inmate Kelly.

Witness statements were taken from Inmate Pruitt, who said he asked an Aramark employee if Aramark or the police were in charge of food, and McCray overheard the remark and took offense. Then McCray allegedly said that all Muslims were bombers and screamed and tried to touch Plaintiff who told him not to touch him, then Plaintiff was taken to jail.

Toney Gray made no statement.

Alfred Kelly said "nothing."

The Aramark employee, apparently present at the incident, Mr. Milton, said "Officer McCray's statement is true."

    c)    <u>Affidavit of Charlisa West (Exhibit D)</u>

Ms. West was a team member who heard the DR at issue. She recalls that Plaintiff pled guilty to the disorderly conduct charge.

    d)    <u>Disciplinary Report (doc. 19)</u>

Shows that an investigation was begun on May 4, 2007, inmate witnesses were interviewed, and Plaintiff pled guilty plea and received 30 days confinement.

**No. 1:07cv161-MP/AK**

IV.    **Plaintiff's evidence (doc. 22)**

a)    Plaintiff's Affidavit (exhibit A)

Plaintiff attests that he was ordered by Defendant to remove his kufee and later called a unibomber and terrorist for practicing Islam.  He also claims that the hearing on the false DR was postponed for further investigation because the DR was not specific about his alleged behavior and that no guilty plea was taken contrary to the facts stated in Ms. West's affidavit.

b)    Declaration of Randy Pruitt (exhibit B)

Pruitt attests under penalty of perjury that he was with Plaintiff when Defendant told them they could not wear their kufis.  Later, on May 3, 2007, Defendant found 12 turkey sausages under a table and Pruitt made a remark about him being a police officer, to which he took offense, and then he began yelling that all Muslims were unibombers and terrorists, especially Plaintiff and Pruitt.  Plaintiff was written up and taken to confinement.   Pruitt also attests that Defendant threatened him if he gave a statement on Plaintiff's behalf and McCray allegedly told Pruitt that he would have Plaintiff transferred.

c)    Declaration of Aldric Maddox (exhibit C)

Maddox was with Plaintiff when he approached Colonel Hart in the library and asked him if he had indeed told Defendant that Muslims could not wear their kufees. Hart denied it and told Plaintiff that Defendant was "trying to lock [him] up."

d)    Disciplinary Report dated May 4, 2007 (exhibit D)

(See above)

**No. 1:07cv161-MP/AK**

e)    Plaintiff's statement in relation to DR 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 (exhibit E)

(See above)

f)    Pruitt's Statement on 5/3/07 in relation to DR 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 (exhibit F)

(See above)

g)    Disciplinary Hearing Worksheet Log #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 (exhibit G)

This worksheet is signed by Charlisa West and states "Postponed [indecipherable] concerning subject matter." The date is difficult to read, but it could be 5/24/07.

h)    Florida Admin. Code §33-601.101 (exhibit H)

Code sections concerning Incentive Gain Time.

i)    Inmate Notice for Month of June 2007 (exhibit I)

Shows gain time award of 10 days for Plaintiff. It also states, "The above awards may not apply to any or all commitments based upon sentencing provisions and/or disciplinary action."

j)    Interoffice Memorandum dated September 21, 2007 (exhibit J)

Shows Plaintiff's sentence structure and release dates with gain time calculations generally, i.e. that he is to earn 10 days a month on Case #01-227 with the maximum release date of 08/06/13 and a tentative release date of 01/06/13.

k)    Defendant's Statement on DR 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 (exhibit K)

(See above)

No. 1:07cv161-MP/AK

l)    Defendant's Interrogatory Responses (exhibit L)

In response to a question to describe in detail what happened on May 3, 2007, Defendant says he saw Plaintiff reading, not working, at food service, so he told him to go back to work, but Plaintiff became loud and argumentative.  He states he told Plaintiff to return to work approximately 4 times, but Plaintiff continued to be disruptive, so he called security and escorted him out.

## V.    Motion for Sanctions (doc. 27)

Defendant takes issue with and seeks sanctions for representations and evidence submitted in conjunction with Plaintiff's response to the summary judgment motion (doc. 22), specifically that he falsely claimed to have received gain time after the DR, thus "proving," that the DR was dismissed.  Defendant argues that Plaintiff knew he had not received gain time because of this DR and also knew that he attended the DR hearing and pled guilty.  Further, Plaintiff was allowed to see documents with this information during a document production on June 27, 2008, prior to his filing a response to the motion, yet he reasserted these false allegations.  As a sanction, sought under Rule 11, Federal Rules of Civil Procedure, counsel seeks compensation of $2472.60 for 31.7 hours spent in defending this lawsuit.

Plaintiff responds that his release dates supports his allegation that he received gain time proving that he did not plead guilty to the DR.

## VI.    Analysis

A claim that a plaintiff was penalized for the exercise of a specific constitutional right is properly considered under the First Amendment.  See Thaddeus-X v. Blatter,

**No. 1:07cv161-MP/AK**

175 F.3d 378, 387 (6th Cir. 1999) (en banc).  It is well settled law that the First

Amendment protects inmates from retaliation by prison officials for filing administrative

grievances and lawsuits.  Green v. Mowery, 212 Fed. Appx. 918, 919 (11th Cir. 2006);

Redd v. Conway, 160 Fed. Appx. 858, 862 (11th Cir. 2005).  Of course, a prison official

may not punish an inmate for exercising his religious beliefs.

However, conclusory allegations of retaliation without "some facts" that would

indicate that the retaliatory act (issuing Plaintiff a DR) was in retaliation for filing

grievances (or practicing his religion) is not sufficient.  See White v. Thompson, 2007

WL 2324613 (S. D. Ga. 2007).  See also Farrow v. West, 320 F.3d 1235, 1248 (11th

Cir. 2003) (prisoner may establish retaliation by "demonstrating that the prison official's

actions were `the result of his having filed a grievance concerning the conditions of his

imprisonment.").  The allegations must be more than "general attacks" upon a

defendant's motivations, Plaintiff must produce "affirmative evidence" of retaliation from

which a jury could find that plaintiff had carried his burden of proving the requisite

motive. Crawford-El v. Britton, 523 U.S. 574, 600, 118 S.Ct. 1584, 1598, 140 L.Ed.2d

759 (1998) (citations omitted).  A prisoner does not automatically cast doubt upon an

institutional decision, nor is the decision "subject to exhaustive challenge," solely

because he was engaged in a First Amendment right.  Adams v. James, 784 F.2d 1077,

1082 (11th Cir. 1986); Adams v. James, 797 F.Supp. 940, 949 (M.D. Fla. 1992).  Even

though prison officials do not have the authority to prohibit inmates from filing

grievances it does not follow that every time an inmate files a grievance the act of doing

so renders the exercise of prison authority suspect. See Adams, 784 F.2d at 1082.


**No. 1:07cv161-MP/AK**

Indeed, while mindful that a plaintiff may not be held to a heightened burden of proof,

see Crawford-El, 523 U.S. at 580-86 (holding that in retaliation claim prisoner could not

be required to show "clear and convincing" evidence of defendant's unconstitutional

motives), courts should approach prisoner claims of retaliation "with skepticism and

particular care" due to the "near inevitability" that prisoners will take exception with the

decisions of prison officials and "the ease with which claims of retaliation may be

fabricated."  Dawes v. Walker, 239 F.3d 489, 491 (2nd Cir. 2001), impliedly overruled in

part on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992,

152 L.Ed.2d 1 (2002).

A prisoner may show a causal connection between the first amendment exercise

and the retaliation by alleging "a chronology of events that creates a plausible inference

of retaliation."  O'Bryant v. Finch, 2008 WL 691689 (N. D. Fla.), *citing* Cain v. Lane, 857

F.2d 1139, 1143 n. 6 (7th Cir. 1988).  The temporal proximity of retaliatory behavior to

the filing of a grievance may serve as circumstantial evidence of retaliation.  Id., *citing*

Gayle v. Gonyea, 313 F.3d 677, 683-84 (2nd Cir. 2002).

The facts alleged are that on March 25, 2007, Defendant McCray told Plaintiff he

could not wear his kufee while working food services.  This is contrary to DOC policy

that allows prayer caps to be worn at all times.  See Muhammad v. Crosby, 2008 WL

2229746 (N. D. Fla) (specifically, Doc. 114-2 filed in 4:05cv193-WS/WCS).  On March

29, 2007, Plaintiff was allegedly again told by Defendant to remove his kufee.  On May

3, 2007, an incident occurred when Defendant allegedly reacted to the "police"

comment by shouting out that Plaintiff and Inmate Pruitt were Muslims, all Muslims were

terrorists and wanted to blow people up, and when Plaintiff threatened to file a grievance, he was taken to Administrative Confinement.  Plaintiff filed an informal grievance on May 4, 2007.

The chronology of events creates, in the opinion of the undersigned, a plausible inference of retaliation.  There are three affidavits supporting Plaintiff's version of what happened--his own, Inmate Pruitt's, and Inmate Maddox', who allegedly overheard Plaintiff ask Colonel Hart about his kufee and make reference to the incident involving Defendant which had occurred earlier.

To support Defendant's version, he has provided his own affidavit and the disciplinary reports which describe in vague and nondescript terms an incident between Plaintiff and Defendant that resulted in a DR, i.e. Defendant "counseled" Plaintiff, who was "loud," "disruptive," and "belligerent."  Reading the DR, it is understandable if, as Plaintiff attests, the disciplinary hearing team at Glades CI commented that the hearing would have to be postponed because the DR did not sufficiently describe his alleged behavior.  (See Doc. 22, Exhibit A).  Further complicating the issue is that while the DR does not describe what the "counseling" was about, Defendant contradicts himself on what prompted the encounter that day.  In the disciplinary investigative report, Defendant advises that the counseling was about 12 stolen sausages, (doc. 17, exhibit C), but in response to Plaintiff's Interrogatories, (doc. 22, exhibit L), he states that he saw Plaintiff reading when he should have been working.  Whether the DR was written for loud and argumentative conduct, stealing sausages, reading a book, being a Muslim,

or writing a grievance is a material fact in dispute, which precludes entry of summary judgment.

Further, the issue of whether Plaintiff pled guilty to the offense with which he is charged in the DR or it was dismissed is equally in dispute. Defendant has submitted written support showing that Plaintiff pled guilty to the DR on May 24, 2007, and provided several cases which support his position that such a plea "checkmates" the retaliation claim. See O'Bryant v. Finch, 2008 WL 691689 (N.D. Fla), *citing* Henderson v. Baird, 29 F.3d 464, 465, 469 (8th Cir. 1994) (a finding that prisoner violated rules checkmates his retaliation claim); Romansky v. Stickman, 147 Fed.Appx. 310 (3rd Cir. 2005) (when prisoner found guilty on DR he is foreclosed from claiming retaliation in writing it). See also Cherfils v. Jones, 2008 WL 817098 (N.D. Fla), *citing* Cowans v. Warren, 150 F.3d 910, 912 (8th Cir. 1998)(*quoting* Orebaugh v. Caspari, 910 F.2d 526, 628 (8th Cir. 1990) (an inmate may not state a claim of retaliation where the "discipline [was] imparted for acts that a prisoner was not entitled to perform.").

Not only is there a factual dispute about what "acts" Plaintiff was performing when he was issued the DR, the disposition of the DR is also in dispute. The DR form shows that Plaintiff pled guilty on May 24, 2007, and received 30 days confinement. However, Plaintiff has submitted a Disciplinary Hearing Worksheet, that although illegible in part, clearly shows under "Basis for Decision," the word "Postponed." Ms. West does not address or otherwise explain this worksheet in her affidavit. The worksheet contradicts the DR which shows under the hearing information that it was not postponed and was held on 5/24/2007, at which time Plaintiff appeared and pled guilty.

**No. 1:07cv161-MP/AK**

The Court takes note of Plaintiff's additional argument, raised in response to Defendant's Motion for Sanctions, that his tentative release date adjusted in June 2007 to allow for ten days of incentive gaintime, which he would not have received had he actually been guilty of a DR. The Court also takes note of the material attached to Defendant's motion seeking sanctions that show Plaintiff's gaintime for May through August 2007 was voided because of a disciplinary report. (Doc. 27, Exhibit 5). However, the disciplinary history attached to Defendant's motion for summary judgment (doc. 17, exhibit A), shows 0 gaintime days lost as a result of the Disorderly Conduct DR issued on May 3, 2007. While the Court does not purport to understand the complexities of sentence structuring or how to interpret data on the various forms utilized by the DOC, these intricacies and apparent contradictions should be explained by Defendant to assist the Court in resolving the issues presented in this case.

Regardless of the conflicts, Defendant's evidence is *very* persuasive. If indeed Plaintiff pled guilty to the DR, that it was not dismissed as he alleges, then his claim of retaliation should be dismissed and he should be subject to some type of sanction for his misrepresentations to the Court.

For purposes of deciding the motion for summary judgment, the undersigned finds that there are too many factual issues in dispute to grant summary judgment on the substantive retaliation claim. However, the motion should be granted in part as to Plaintiff's claim for punitive damages. It is well settled that where no physical injury results from the alleged conduct of the Defendant, compensatory and punitive damages may not be awarded. 42 U.S.C. §1997e(e); <u>Smith v. Allen</u>, 502 F.3d 1255 (11th Cir.

**No. 1:07cv161-MP/AK**

2007); Asad v. Crosby, 158 Fed. Appx. 166 (11th Cir. 2005).  Thus, it is herein

recommended that Plaintiff may proceed *only* on his claim for nominal damages as it

relates to the claim for retaliation.

Finally, with regard to the motion for sanctions, the undersigned is of the opinion

that a ruling on it should be reserved until additional evidence can be submitted in

connection with this issue as set forth below.

Florida Statute §944.279(1) provides for the following sanctions when a prisoner

is found to have brought a malicious suit involving false information:

> At any time, and upon its own motion or on motion of a party, a court may
> conduct an inquiry into whether any action or appeal brought by a prisoner
> was brought in good faith. A prisoner who is found by a court to have
> brought a frivolous or malicious suit, action, claim, proceeding, or appeal
> in any court of this state or in any federal court, which is filed after June
> 30, 1996, or to have brought a frivolous or malicious collateral criminal
> proceeding, which is filed after September 30, 2004, or who knowingly or
> with reckless disregard for the truth brought false information or evidence
> before the court, is subject to disciplinary procedures pursuant to the rules
> of the Department of Corrections. The court shall issue a written finding
> and direct that a certified copy be forwarded to the appropriate institution
> or facility for disciplinary procedures pursuant to the rules of the
> department as provided in s. 944.09.

Rather than award monetary sanctions under Rule 11, which would not likely be

collected from this Plaintiff, the undersigned suggests that if the motion for sanctions is

ultimately awarded it will constitute a ground for dismissal of this lawsuit and a "strike"

under 28 U.S.C. §1915(g).  See Lawson v. Luke, 2009 WL 102531 (N.D. Fla. 2009)

(defendant not likely to collect monetary sanctions from prisoner, dismissal is

appropriate sanction for making false allegations in complaint).  Also, if the motion for

sanctions is granted, the Court will send a certified copy of said order and recommend

**No. 1:07cv161-MP/AK**

that the DOC impose whatever disciplinary sanctions it deems appropriate under section 944.279.  See Hall v. State, 752 So.2d 575 (Fla. 2000)(statute does not grant court authority to direct the DOC to impose any particular type of sanction).

If these recommendations are adopted, it is further recommended that the matter be referred to the undersigned for further proceedings on the motion for sanctions which will include an order directing Defendant to provide additional evidence on the issue of the disposition of the DR, particularly affidavits from those in attendance at the hearing who may have witnessed Plaintiff's presence and guilty plea, as well as a certificate of conferral on the motion for sanctions certifying that counsel has discussed with Plaintiff the possible sanctions available to the DOC pursuant to Florida Statute §944.279(1) should it be determined that false statements have been made to the Court in conjunction with this lawsuit.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion for Summary Judgment (doc. 17) be **GRANTED IN PART**, insofar as Plaintiff's claim for punitive damages should be **DISMISSED**, and **DENIED** in all other respects.

It is further **RECOMMENDED** that this matter be remanded to the undersigned for further proceedings on the motion for sanctions.

**IN CHAMBERS** at Gainesville, Florida, this 26th day of August, 2009.


 s/ A Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


**No. 1:07cv161-MP/AK**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

No. 1:07cv161-MP/AK